# Pennsylvania Railroad Company *versus* Lewis *et ux.*

1. A child about nine years old was sent by his mother, who resided in Harrisburg, near defendants' railroad, on an errand across the road; whilst on the track he was killed by an engine going westward; there were iron-works and houses for the hands on the opposite side of the road at that point, which was in the outskirts of the city; and the hands of the works and other persons were frequently crossing the track about the place. East of where the boy was struck was a curve, which prevented the engineer from seeing him till within too short a distance to stop the train after he was seen. There was no ordinance of the city limiting the rate of running trains at that point. There was evidence that the train was running at a high rate of speed. *Held*, that whether the train was running at a rate of speed which was safe and prudent under the circumstances, was for the jury.

2. It is not common prudence or ordinary care for trains to enter the outskirts of a city at a dangerous rate of speed, although the people have no right to go on the railroad track.

3. Although persons on a railroad track are trespassers, regard must be had to the habits, character, condition and circumstances of a people living in a city and immediately on the line of a railroad.

4. The Commonwealth by its police power may regulate positive rights when for the safety, protection and welfare of the people; and the speed of trains through towns and cities may be regulated by ordinance.

5. When it is determined by the jury on the facts submitted to them that the rate of speed of a train is incompatible with public safety under the circumstances of the place, the rights of a company even on its own track are qualified by the law of the public good.

6. The court charged: "If the boy (being on the track) had sufficient judgment and discretion to know his danger, and did not exercise the ordinary care that one of his age and maturity should, he was guilty of such negligence as would prevent him from recovering," &c. *Held* not to be error.

7. There was evidence in this case of contributory negligence by the parents as to exposing their son to danger, and submitted with proper instructions.

8. Philadelphia & Reading Railroad Co. *v.* Hummell, 8 Wright 375, distinguished.

May 17th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, and WOODWARD, JJ.

Error to the Court of Common Pleas of *Dauphin county:* Of May Term 1875, No. 55.

This was an action on the case, brought September 10th 1870, by Daniel Lewis and Margaret his wife against The Pennsylvania Railroad Company, for causing the death of their son, Edward Lewis, a child eight years and six months old, through the negligence of defendants' servants.

The parents lived near Lochiel Iron-Works in the city of Harrisburg, a short distance from defendants' railroad track; on the 22d

29 P. F. SMITH—3

[Pennsylvania Railroad Co. *v.* Lewis.]

of November 1869, the child was sent by his mother on an errand to an aunt on the other side of the track; whilst on the track he was struck by a passenger train of the defendants' moving west and killed.

By an ordinance of the city of Harrisburg, passed in 1862, the speed of railroad trains within the city was limited to seven miles per hour; at the time and up to 1868 the southeastern boundary of the city was Hanna street; and the place where the accident occurred was, prior to 1868, outside of the city. In that year the city limits were extended beyond Hanna street; nothing was done to extend the ordinance beyond Hanna street, until, by the Act of April 9th 1869, the limits of the city were still further extended, and the whole territory was made subject to the same ordinances, &c., as those by which the city was then governed. The accident happened at a point within the city limits at the time of its occurrence.

The case was tried December 14th 1874, before Henderson, J.

Margaret Lewis the mother testified, that about noon on the 22d of November 1869, she directed her son to go to his aunt's; the boy left the house as directed; she did not see him again till he was brought home dead; the father was not in the house at the time; he was at work at the Lochiel Mill where he was employed; the aunt lived at the mill, which was half-a-mile west of the plaintiff's house." The aunt's house was on the other side of the railroad.

Daniel Balsley testified, that some time before the accident, he had built a house for the Lochiel Company at their mill; by order of that company he made a partition in it; and a small part of the house was used as a station; the defendants had no ticket agent there; the accommodation train stopped there. "The Lochiel Iron Company had a flag there. I put a private crossing at this station to get sand from the river. The water-closets of the mill were on the other side of the railroad from the mill. This private crossing was used by the Lochiel Company to get the sand over, and in going to water-closets. In 1869 there was only one row of forty houses between Lochiel and McCormick's Furnace; the distance between the two furnaces was about five hundred yards. There were considerable houses from McCormick's to Harrisburg, and manufactories also; there was a curve below the station-house; there were forty-eight houses below the Lochiel Mill; there was a siding below the mill; there was a very long coal-bin alongside the road, on the east side; they were up within ten or twelve feet of this crossing; coal-bin belonged to Lochiel Company; I could see an approaching train one hundred and fifty yards from coal-bin; in 1869 there were two tracks there; bin came within eight feet of the track; the siding did not interfere in looking down the track; we could see over gondola cars, but could not see over

high cars on the siding; the Lochiel Company ran a cart road from the back road to the station, but it was not safe; when the accident happened the boy was about fifteen feet above the crossing, on the railroad; the boy lay, as near as I could tell, about the centre of the brick house called the depot, on the track. * * * This road, called the back road, after crossing the railroad, goes up through McCormick's property to Harrisburg; this road was used by everybody; I saw this accident; I was standing a little above the brick house, about fifteen feet from the railroad; I heard the whistle sounding very loudly, and I ran and saw the pilot strike the boy; he was on the right-hand track coming up, and the train was coming in the same direction; a freight was going east at the same time on the other track; I was attracted by the 'danger whistle' of one of the locomotives, but cannot say which; all the work I did was at the expense of Lochiel; neither I nor they had any connection with the Pennsylvania Railroad Company; my opinion that the train was running at the rate of twenty-five miles an hour, is formed from simply looking at the train of cars running along the railroad. The length of Lochiel Mill is three hundred and one feet; the whole of it is west of the cart-road; . the front of the station is fifteen feet from the front of mill."

There was evidence, by a number of witnesses, that the railroad track in the vicinity of the place of the accident was travelled generally by the people, especially since the building of the Lochiel Mills, because it was a shorter way than on the public road; the ties were worn smooth by the travel.

For defendants, Christian Hoffmaster testified : " I was engineer on mail train; it left Philadelphia at 7:50; schedule time at Harrisburg was 12:45; it reached Lochiel at 12:35 or 12:37, on time; the train was in order, and had chain-brake on; there is no better brake in use; the brake was in good order; the road-bed was in good order. * * * As I came around the curve, before reaching Lochiel, I saw a boy coming down from the mill towards the railroad; I blowed the whistle, but he took no heed to it; he walked right on the track in front of train and turned up towards Harrisburg; I did all I could to stop the train, but could not; the engine struck the boy and knocked him over on the other track; I applied the brake, and broke the chain in doing so; the boy, when I first saw him, was forty or fifty feet from me; the bell rang and I whistled; I had whistled before I reached the curve; the boy was five or six yards away from us when he stepped upon the track; the boy could not have been saved if the brake had not broken; I could not have done anything more than I did do to save the boy; I do not think he could have been saved if we had had the air-brake; it was not invented at that time; I examined the break; it was a clean break, and good iron; the speed of the train, at the time the boy was struck, was from fifteen to eighteen

miles an hour; we shut off steam at the bridge below Lochiel Mill—three hundred or four hundred yards below; its schedule time is about twenty-one or twenty-two miles an hour; a train would slack up in three or four hundred yards from the shut-off to about fifteen or eighteen miles an hour; I think we had six cars. * * * We entered the city at Hanna street at seven miles; we had no knowledge that it extended further east than that; we slackened up because we were coming into the city limits at Hanna street."

There was other evidence, that the brake on the train at the time of the accident was the best then in use; it would not stop a train running at fifteen or eighteen miles an hour in 60 feet; running at seven miles an hour a train could not be stopped in 50 feet. There was evidence also, that Hoffmaster was a first-class engineer, of long experience, one of the best in the employ of the defendants.

In rebuttal, the plaintiff gave evidence that Hoffmaster, when before the coroner's inquest, testified, that at the time of the accident the train was running at the rate of from twenty to twenty-five miles per hour.

At the request of defendants the court withdrew from the consideration of the jury all that part of the evidence relating to the permissive use of the track of defendants' road by the public in the vicinity of the place of the accident.

The following are defendants' points with their answers :—

1. Parents owe protection to their children. The plaintiffs' testimony in this case showing that they permitted the boy to go on the railroad, the plaintiffs failed in performing their duty to the deceased and cannot recover.

Answer. "If the plaintiffs permitted the boy to go on the railroad track, the law of this point is correctly stated, but we do not recollect any evidence to show such permission. It is true, the boy would have to cross the railroad in going to his aunt's, but we cannot say to you that a boy of the age of this one would require his parents to be with him in crossing the railroad, or to have a protector for that purpose. We submit to you to say, under the evidence, whether they failed to perform their duty to the deceased boy. If they did, and their negligence contributed to his death, then they cannot recover."

2. Knowingly to allow a boy eight years of age to go on a railroad track, where trains of cars are continually passing and repassing, is such negligence in his parents as will prevent them from recovering in an action brought by them for loss of service, and the uncontradicted testimony showing this negligence here, the verdict must be for the defendant.

Answer. "We answer this in the affirmative as a proposition of law, but do not say that the uncontradicted testimony establishes

the fact as stated; you will determine the facts involved in this point."

3. The fact that the boy was killed where he was, is presumptive evidence that he was unprotected and exposed by his protectors; and as their negligence contributed to his death, they cannot recover for loss of service.

Answer. "We have already said that if the negligence of plaintiffs contributed to the death of the boy, they cannot recover, but we cannot say that he was 'unprotected and exposed by his parents,' or that the fact that he was killed where he was, on the railroad, was presumptive evidence that he was, in the eye of the law, unprotected and exposed by his protectors, so as to attribute to them that negligence which would defeat a recovery in this action. And we also refer you to the answer to the first point of the defendant, and to the general charge, for the qualification of this point."

4. It is the duty of parents at all times to shield their children from danger, and this duty is the greater where the danger and risk are imminent. The uncontroverted proof here being that the parents of the deceased worked and lived close to the railroad tracks, and knew of the running of the trains every few minutes, and of the running time of the mail train west, the plaintiffs, by their own fault, contributed to the accident by which their child was killed, and cannot recover.

"We answer the proposition of law in this point in the affirmative, and refer to you the question of fact, whether the plaintiffs contributed to the accident by which their child was killed."

5. The law determines precisely the extent of parental duty. Its standard is not a shifting one; and as there has been no performance of it at all in this case, the verdict must be for the defendant.

Answer. "We cannot say there was no performance of parental duty in this case; and repeat, as we have already said, that whether there was contributory negligence on the part of the plaintiffs is, under all the evidence in this case, for the jury. We decline to say that your verdict must be for the defendant."

6. The defendant has the lawful right to the unobstructed and exclusive use of its tracks, except at public crossings; and if persons go upon the tracks at other places, they go where they have no lawful right to be, and if accidents ensue therefrom, the railroad company is not responsible.

"We answer this point in the affirmative."

7. If the deceased came upon the railroad track in front of and so near the running engine, that no efforts could be made by those in charge of the train sufficient to prevent the accident, there can be no recovery. There being no question here as to these facts, the verdict must be for the defendant.

[Pennsylvania Railrord Co. *v.* Lewis.]

"We answer this point in the affirmative, unless you find that defendant was guilty of negligence in running its train; and if you so find, then there may be a recovery, unless you determine, under the instructions already given, that there was such contributory negligence as to defeat the recovery."

9. Upon the whole evidence of this cause the law of the case is with the defendant, and the court is requested to give binding instructions to the jury, that the plaintiffs cannot recover.

Answer. "We decline to withdraw this case from the jury."

The court charged: * * * "The question naturally arises, is the defendant liable by reason of the negligence of its agents in running this train on the day this boy was killed? Was it owing to the negligence of defendant that he was killed? And here I withdraw from your consideration all the testimony offered, on the part of the plaintiffs, to prove that the public were accustomed to use the track, at this point and in this neighborhood, as a passage way, by sufferance of the Pennsylvania Railroad Company. This testimony you must discard entirely from your minds, in the consideration of the evidence. It did not establish the fact proposed in the offer. The Pennsylvania Railroad Company is just as much entitled to the free and uninterrupted enjoyment of its track at this particular place, as at any other along the entire line of its road. It would be cruel and wicked to expose the men, women and children of that neighborhood to the dangers of trespassing upon this railroad track, upon the groundless supposition that they had acquired a right of way or a right so to use the track, by the sufferance of the defendant; and it would be unjust and positively dishonest to hold the company responsible for injury to persons who knowingly trespass upon the track, and take the risk and consequences upon themselves.

"This collision happened within the limits of the city of Harrisburg, near the Lochiel Iron-works. On the part of the plaintiffs, it is alleged that the defendant's train was running at the rate of about twenty-five miles; that it was an unusual rate of speed, reckless and dangerous to the lives of citizens living in this part of the city. The defendant answers, and attempts to prove, that the train was running at its usual rate of speed, was on a good track, with the best brake in use, and was in perfect order, and everything done that could be done to save the life of the boy. *Here there is a discrepancy in the testimony as to the distance the boy was from the engine and the place where he first stepped on the track—whether at the crossing, or further up, opposite the mill. How this was is for you. Was the train running at a safe and prudent rate of speed?* Was everything done that could be done by defendant's agents under the circumstances? Or was the rate at which the train was approaching and running, dangerous and reckless? We think, and perhaps you will have no difficulty in

concluding, that when the boy was seen upon the track, everything possible was done to save him. Then you have to determine whether there was negligence or want of ordinary care in running the train, taking into consideration the fact, that it was along a part of the road within the city limits, which was, to some extent at least, occupied by manufactories and dwelling houses; the curve around which the train came, and the distance of the place where the accident occurred from the curve. And in this connection I call your attention to the fact, that the engineer swears that he whistled before reaching the curve, and let off steam, in which he is corroborated by the fireman on the same train.

" We instruct you, that the *locus in quo*—the place where the boy was killed—was not within the provisions of the ordinance of the city of Harrisburg, limiting the running of trains within the city limits to seven miles an hour. * * * This ordinance was passed in 1862. The city limits were extended by the Act of 1868, but this Act did not extend the city ordinances over the new territory taken in. The Lochiel Iron-works were not within the city limits when the said ordinance was passed. It is then contended, that the Act of 1869 did extend the city ordinance over this place; but we say to you, that it had not this effect, and that act was unconstitutional and void, as we shall hereafter say more fully in answer to a point submitted by the defendant. You must therefore, in your investigation, consider the evidence as if no such ordinance existed. The ordinance referred to is withdrawn from your consideration.

" Greater danger demands higher vigilance, and when it is said that negligence is the absence of ordinary care, it must be understood that ordinary care depends very much upon the circumstances of each particular case. Certainly, what might be ordinary care in running a train in an uninhabited country, might be gross negligence in running the same train, in the same way and at the same speed, through the streets of a town or city. If you find that the defendant's train was running at the usual rate of speed, and not at a reckless and dangerous rate, but with proper care and caution, upon a good track, with the best brake then known, and with a due regard—and by this I mean, with that regard that a prudent man would have—for the protection of human life under the circumstances of this case; then, we say to you, that the plaintiffs cannot recover, and your verdict should be for the defendant.

" But should you find that the defendant was guilty of negligence in the running of this train, you have another question to determine—that of contributory negligence. Were the plaintiffs guilty or chargeable with contributory negligence in permitting their son, a boy of eight or nine years of age—the evidence shows

[Pennsylvania Railroad Co. *v.* Lewis.]

that he was about eight years and six months old when killed—to go out in this neighborhood without a protector, or in sending him on an errand which required him to cross the railroad track of defendant, without having a care-taker with him? The evidence is that he was a healthy, intelligent boy. Was this such a dangerous place, that it was unsafe for a boy of this character to be absent from the reach of his parents or some care-taker? Are the parents chargeable with negligence in regard to their son, because the mother sent him upon this errand? You will observe that there is no evidence that she directed him to go up to his aunt's by the short cut upon the railroad track. It is very clear, he could have gone to his aunt's without going upon this track, except to cross it.

"*But further, was this boy guilty of negligence in walking up along the track of this road, or was he without that judgment and discretion by reason of his tender years, which would charge one of more mature years with negligence? This child is to be held responsible for that degree of negligence only which would be attributable to one of its years.*

"This question of contributory negligence, as indeed frequently questions of negligence are, is a mixed question of law and fact, and is to be decided by the court when the facts are undisputed or conclusively proved; but not to be withdrawn from the jury when the facts are disputed or the evidence conflicting. *The rule of law in regard to an adult, differs from that of an infant, or one of more tender years. The degree of discretion in the case of an infant, depends on his age and knowledge.* Of a child of three years of age, less caution would be required than of one of seven, and a child of seven less than one of still an older age. *The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case. Did this boy exercise that ordinary care that is required of one of his age? Was he crossing the railroad track at the usual crossing and cart road, or was he walking up along the track—on the track where a large number of trains were running daily, passing each other at times, going east and west? For we say to you, that if this boy was walking on the track of this road, taking it as a short cut to his aunt's, he was where he had no right to be;* and it matters not that many others had done the same; this did not justify this boy, nor could it justify the father and mother in using this track as a foot-way; *and if the boy in so doing had sufficient judgment and discretion to know the danger he was running, and did not exercise the ordinary care that one of his age and maturity should, he was guilty of such negligence, concurring to an accident, as would prevent him from recovering against the company*, because he was a wrong-doer—a trespasser—and did not guard against the injury as he might have done; and if he

[Pennsylvania Railroad Co. *v.* Lewis.]

could not recover, under the same conditions, if the accident resulted in his death, the plaintiffs cannot recover; for his negligence—the negligence of the son, the servant, the agent—is imputable to the plaintiffs themselves, when they ask to recover damages for an injury to their son, which was occasioned by an accident to which his own negligence contributed.

"If the boy was old enough to go to school in the neighborhood, to be sent an errand requiring him to cross the railroad track, had he sufficient judgment and discretion to know the danger of walking upon this railroad track? If he had this judgment and discretion, did he exercise that ordinary care that the law exacts of him? Did he know that he incurred the risk of trains passing over this track he was walking upon? These questions are for you; as you find the facts, the law determines the rights of the parties. If the boy had this judgment and discretion, and did not exercise it, he was guilty of such negligence and want of ordinary care in going upon and along defendant's railroad track, as would prevent the plaintiffs from recovering in this action. * * *

"Was the defendant guilty of negligence in running its train that caused the death of Edmund Lewis? If it was not, your verdict should be for the defendant; if it was, were the plaintiffs guilty of contributory negligence in permitting the boy to be out without a protector, or in sending him an errand which required him to cross the railroad track? And here I may say to you that I recollect no evidence to justify you in finding plaintiffs guilty of contributory negligence, except in permitting him to be out without a protector, and in sending him to his aunt's, which required him to cross the railroad track; and this you will consider in connection with his age and maturity, and the dangerous locality, as we have already instructed you. Or, had the boy sufficient judgment and discretion to know the risk he was running, and did not use the ordinary care the law requires of one of his age and maturity, to avoid the danger he was exposed to under all the circumstances of this case? If you find that there was negligence in the boy, under our instructions, then the plaintiffs cannot recover."

The verdict was for the plaintiffs for $1000.

The defendants took a writ of error.

The sixth assignment of error was, that the court erred in submitting the case to the jury after answering defendants' sixth point in the affirmative.

The ninth assignment of error was that "the court erred in submitting the case of the plaintiffs, both in the general charge and answers to the points, as if the action was brought by the boy instead of by the plaintiffs."

The other assignments were the answers to the defendants' points and the parts of the charge in italics.

[Pennsylvania Railroad Co. *v.* Lewis.]

*L. W. Hall* and *F. Jordan*, for the plaintiff in error.—The child was where he had no right to be; the defendant's had the right to presume that even children of tender age would not be on their track; they could not be there without fault of their parents or guardians: Railroad Co. *v.* Hummel, 8 Wright 375. Though a child of tender years may recover for an injury, partly caused by his own imprudent act, a parent cannot: Glassey *v.* Railroad Co., 7 P. F. Smith 173.

As to the 9th assignment of error, they cited: Railroad Co. *v.* Spearin, 11 Wright 300. Railroad companies must keep the time announced in their schedules: Wharton on Negligence, sec. 662; Denton *v.* Gr. W. Railway, 5 E. & B. 860; Gordon *v.* M. & L. Railroad, 52 N. H. 596. No conceivable rate of speed is *per se* evidence of neglect: Shearman & Redf. on Negligence 535, sec. 478; Wild *v.* Hudson Railroad, 29 New York 315.

*O. F. Johnson* and *H. Alricks*, for defendants in error.— Whether permitting the child to go along the railroad was negligence, was for the jury: Catawissa Railroad Co. *v.* Armstrong, 2 P. F. Smith 282; Schinhold *v.* N. Beach & M. Railroad, 40 Calif. 447; Drew *v.* Sixth Avenue Railroad, 26 N. Y. 49; Lovett *v.* Salem & S. Danvers Railroad, 9 Allen 563; Pennsylvania Railroad *v.* Kelly, 7 Casey 372; Philadelphia & Reading Railroad *v.* Long, 25 P. F. Smith 257. Whether ordinary and reasonable care was used was for the jury: Pennsylvania Railroad *v.* Ackerman, 24 P. F. Smith 265. More care is to be exercised by engineers towards the young, the aged and infirm, than towards those of mature years and active bodily powers: 38 N. Y. 445; Baltimore and Ohio Railroad *v.* Fryer, 30 Maryland 47; O'Flaherty *v.* Union Railway, 45 Missouri 70. To constitute negligence of parents, there must be such omission as persons of ordinary prudence exercise towards their children: Beers *v.* Housatonic Railroad, 19 Conn. 566. Negligence and contributory negligence are for the jury, and to be determined by the circumstances of each case: Robinson *v.* Cone, 22 Vermont 225; Pendrill *v.* Second Avenue Railroad, 43 Howard 409; Johnson *v.* Bruner, 11 P. F. Smith 58. The father being employed in the Lochiel Mills, and thus having the right to use the crossing there, the child had the same right: Pittsburg, F. W. & C. Railroad *v.* Bumstead, 48 Ill. 221; Reeves *v.* Del. & Lacka. Railroad, 6 Casey 461; Wild *v.* Hudson River Railroad, 33 Barbour 504. If the train was going too fast the parting of the brake chain was no excuse: West Chester & Philadelphia Railroad *v.* McElwee, 17 P. F. Smith 312; Aaron *v.* Second Avenue Railroad, 2 Daly 127. Railroad companies running their trains through cities or populous places, are held to a degree of care commensurate with the danger thus involved: T., W. & W. Railroad *v.* Harmon, 47 Ill.

298 ; Johnson *v.* Hudson River Railroad, 6 Duer 633 ; Daley *v.* Norwich & Worcester Railroad, 25 Conn. 595.

Chief Justice AGNEW delivered the opinion of the court, May 24th 1875.

This case was submitted to the jury correctly and fairly. In the first place the judge withdrew from the jury all the evidence that the public were accustomed to use the track at or in the neighborhood of the place of the accident, as a passage-way by sufferance of the railroad company ; saying also that the company "is just as much entitled to the free and uninterrupted enjoyment of its track at this particular place as at any other along the entire line of the road." He also informed the jury, " that if this boy was walking on the track of this road, taking it as a short cut to his aunt's, he was where he had no right to be ; and it matters not that many others had done the same ; this did not justify this boy, nor could it justify the father and mother in using the track as a footway."

He then fairly left the great question of the cause to the jury in fitting terms ; that is, whether the train was " running at a safe and prudent rate of speed ;" or (said he) " was the rate at which the train was approaching and running dangerous and reckless ?" Again, " if you find that defendants' train was running at the usual rate of speed and not at a reckless and dangerous rate, but with proper care and caution, upon a good track, with the best brake then known, and with a due regard—and by this I mean with that regard that a prudent man would have—for the protection of human life, under the circumstances of the case, then we say to you that the plaintiffs cannot recover, and your verdict should be for the defendants." Surely this was not exacting an unjust or illegal degree of care and caution of the company entering within the outer limits of the city of Harrisburg where the accident happened. It took place at the Lochiel Iron-works, situated immediately alongside of the track, where numerous hands were constantly passing and repassing, and in the vicinity of the rows of houses occupied by the hands employed in these large works, and in a neighborhood where many persons were likely to be. According to the plaintiff's evidence, the rate of speed of the train, while approaching and entering within these limits, was from twenty to twenty-five miles an hour. The engineer himself testified to eighteen miles, and it was shown that before the coroner's jury he had testified that the speed was from twenty to twenty-five miles an hour. There was therefore evidence which justified the instructions, and this distinguishes the case, at once, from that of the Railroad Company *v.* Hummel, 8 Wright 375, in which Justice Strong says, the cars were moving slowly by their own gravity, yet so perfectly under the control of the engineer

[Pennsylvania Railroad Co. *v.* Lewis.]

that they could be immediately stopped.   The question presented in this case is, therefore, whether a railroad company may enter into the outskirts of a populous city at a high and dangerous rate of speed, even though it be upon its own track where the people have no right to be.   He would be without much feeling for his kind, and wedded to technical rights to an unwarranted extent, who could affirm this proposition ; and thus leave a people unprotected by law, and subject to whatever danger any motive of interest or otherwise might lead to in the use of a high and dangerous rate of speed.   The Railroad Company *v.* Hummel, *supra,* asserts the rights of a railroad company upon its own track, as thoroughly as any case to be found in the books, and even there it is said, " ordinary care they must be held to."   Is it common prudence or ordinary care to run into the outskirts of a city at a rate of speed so high and reckless that persons happening on the track are liable at any moment to be overtaken and crushed to death by the ponderous wheels of the swiftly-moving engine ?   Conceding that these people are trespassers, yet must we have no regard to the habits, character, condition and circumstances of a people living in a city and immediately on the line of a railroad ? Clearly to disregard them would be contrary to our sense of humanity, and to that common judgment of mankind expressed in the maxim, " *sic utere tuo, ut alienum non lædas,*" and that rule of right doing which requires men to do unto others as they would have them to do unto themselves.   But beyond this there is also that supervising authority of the state, which, by its police powers, is enabled to regulate even positive rights, when it is necessary for the safety, protection, and welfare of the people.   Hence it has been held that the speed of trains through towns and cities may be regulated by municipal ordinances.   But the absence of any such positive regulation does not leave the way open to a railroad company to run its trains into a populous town at a dangerous and reckless rate of speed.   Are the circumstances of the case not to be heeded, and are the people, regardless of the probability of the loss of life, to be run down and crushed to death merely because they happen to be trespassers ?   Does no duty rest upon a railroad company, because it is running upon its own track, unfenced and unguarded ?   Surely we must not disregard the habits, character and condition of a people, accustomed to run thoughtlessly and unheedingly into danger.   We must take into account the feebleness of age and helpless infancy, the infirmity of mind and body of many living on a railroad track, their want of reflection and unthinking heedlessness, their want of apprehension of danger, and entire absence of injury they suppose they do to the hard rough track of a railroad ; the many motives they have to do an act which, though a trespass, is seemingly to them no cause of complaint.   Surely the courts have not lost their power to declare

what is ordinary prudence and care in the use of its track by a railroad company merely because the track is its own, and no one may rightfully trespass there. The circumstances which qualify this right must be taken into account and submitted to a jury under proper instructions. It is said this is to subject the company to the influence of prejudice, and that juries are always unfavorable. The causes of this prejudice it is not proper to discuss, but the common sense of mankind is not often very far wrong. Not to submit circumstances to a jury upon the evidence, and under the controlling power of a court, is simply to set aside the trial by jury. Whether the population is dense or sparse at the *locus in quo*, what is the likelihood of danger, and what the rate of speed compatible with the public safety under the circumstances, are facts which necessarily find their way into the jury box. When it is thus determined that the rate of speed is incompatible with public safety, under the circumstances of the place, the rights of the company, even upon its own track, are qualified by the great law of the public good. Life is too sacred to become the sport of chance, or the sacrifice of heedless will. "*Salus populi est suprema lex.*" "*Necessitas vincit legem et quod cogit, defendit.*"

We hold, therefore, there was no error in the instruction of the court in this respect. This being the case, there cannot be any serious objection to the charge upon the other questions in the cause as to contributory negligence either on the part of the boy or his parents. Referring to the unlawful act of the boy in being upon the track, the judge said: "And if the boy in so doing had sufficient judgment and discretion to know the danger he was running, and did not exercise the ordinary care that one of his age and maturity should, he was guilty of such negligence, concurring to an accident, as would prevent him from recovering against the company because he was a wrongdoer—a trespasser—and did not guard against the injury as he might have done. And if he could not recover, under the same conditions, if the accident resulted in his death, the plaintiffs cannot recover; for his negligence—the negligence of his son, servant, the agent—is imputable to the plaintiffs themselves when they ask to recover damages for an injury to their son, which was occasioned by an accident to which his own negligence contributed." As to the negligence of the mother herself, the court affirmed the fourth point of the defendants, leaving the facts to the jury, and this fully covered the ground in connection with the answers to the third and fifth points of defendants.

Finding no error, the judgment is affirmed.