# Julius Lederman et ux. *v.* Penna. Railroad, Appellant.

*Negligence—Railroads—Grade crossings—Infant—Evidence.*

In an action against a railroad company to recover damages for the death of an infant of tender years, killed at a grade crossing, the case is for the jury where there is evidence that the place where the child was killed was in a populous district at the intersection of the railroad with three streets; that no safety-gates were maintained; that the crossings were guarded by a single watchman only, who was an elderly man, and that the detached cars which struck the child were going at a rate variously estimated by different witnesses at from four to ten miles an hour.

*Contributory negligence of parent.*

In such a case where it appears that the child was a boy about four and one half years of age, the question of the mother's contributory negligence is for the jury, where the mother testifies as follows: "I last saw my little boy when he left the dinner table about or near one o'clock P. M. We ate in the dining-room. You go from it through the kitchen out in the yard. He said he was going out where Harry Marshall was selling shooting crackers. He had been helping him all morning. Harry Marshall lived a few doors from us, on the same side of the street towards North Queen street. He went out the kitchen way, and out through the alley, and I didn't see him again until they brought his body home."

*Evidence—Action of railroad company after accident.*

In an action against a railroad company for negligence at a crossing, it is proper to admit evidence to show that the company very soon after the accident erected gates at the crossing.

*Evidence—Speed of train—Competency of witness.*

Where a witness testifies that he was five hundred feet west of Lemon street, and did not see the cars after they crossed it, it is not error to re-

fuse to permit him to testify as to the speed of the cars after the brakes were thrown off as they were nearing Walnut street crossing where the accident occurred.

*Evidence—Speed—City ordinance.*

Evidence that a city ordinance forbade trains to be run at a higher rate of speed than five miles an hour, may be considered in ascertaining whether or not the train was being negligently run, but such an ordinance is not in itself evidence of negligence.

Argued May 14, 1894.  Appeal, No. 38, Jan. T., 1894, by defendant, from judgment of C. P. Lancaster Co., Sept. T., 1891, No. 5, on verdict for plaintiffs.  Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.  Affirmed.

Trespass for death of child.  Before LIVINGSTON, P. J.

At the trial, it appeared that, on July 3, 1891, plaintiffs' son, a boy four years and eight months old, was killed at a point in the city of Lancaster where defendant railroad crosses diagonally the intersection of North Prince street and West Walnut street.  No safety gates were maintained at the crossings, which were guarded by one watchman, a man some seventy-five years old.  The boy was struck by two cars which had been detached from the seashore express in order to allow another car to be connected with that train ahead of them.  The evidence as to the speed of the cars was conflicting.  Some of the witnesses estimated it at ten and others at four miles an hour.

The child's mother testified as follows: "I am the wife of Julius, and mother of Sydney Lederman, lived at 36 East Walnut street, on July 3, 1891.  I last saw my little boy when he left the dinner table about or near one o'clock, P. M.  We ate in the dining-room.  You go from it through the kitchen out in the yard.  He said he was going out to where Harry Marshall was selling shooting crackers.  He had been helping him all morning.  Harry Marshall lived a few doors from us, on the same side of the street towards North Queen street.  He went out the kitchen way, and out through the alley, and I didn't see him again until they brought his body home.  I heard of his death about fifteen minutes after he left the house. . . . I had not sent Sydney on an errand.  I did not direct him where to go.  He went to Harry Marshall at his stand where he was selling shooting crackers to help him ; it was just a stand for over

July.  On the 4th of November that year, he would have been
five years old."

Walter McElroy, called by plaintiff, testified as follows : " I
was accustomed to pass at that point, it was much used by pe-
destrians, the gates that are there now, they were not there at
that time.   Q. Were they, or not, erected there shortly after
this accident?"   Objected to, admitted and exception. [8]

The witness answered in the affirmative.

The court admitted, under objection and exception, an ordi-
nance of the city of Lancaster forbidding trains to be run with-
in the city limits at a greater 'speed than five miles an hour. [7]

John Keneagy, called by defendant, testified as follows: " I
remember. the accident, July 3, 1891, when the boy was killed.
I was working on the railroad, was foreman of the floating
gang, track men, west of Lemon street about 500 feet.   I saw
the seashore express go by, it was divided into two parts be-
fore it passed me and the front part was drawing away from
the rear part.   I could see the rear part go past Lemon street,
after that I didn't look at it.   I have been about the railroad
for 14 years.   Saw cars run and rode on them.   Q. What, in
your judgment, was the rate of speed of these two detached
cars when they passed you, and what at Lemon street?"   Ob-
jected to, disallowed and exception. [9]

The court charged in part as follows :

" [During the argument of the case reference has been made
to the speed of those two detached passenger cars.   With ref-
erence to which the testimony of witnesses differs, some fixing
the rate as low as four miles an hour, some as high as ten miles,
and the ordinances of the city of Lancaster have been cited
and referred to as showing that running cars at a higher speed
than five miles an hour, is negligence on the part of the com-
pany.   This is an error; while it may be considered in ascer-
taining whether the train was being run negligently, or not, it
is not per se evidence of negligence.] [5] . . . .

" [The Supreme Court say, in a late case, that if a railroad
company makes it safe for the public to cross on the highway,
by gates, by watchman, or other means, it may run its trains
at any rate of speed, but if it neglects to use every precaution
necessary for the safety of the public, no moderation of speed
will excuse its neglect.] " [6]

Defendant's points were among others as follows :

" 2. The ordinance given in evidence, limiting the rate of speed of cars and trains on any railroad within the limits of the city of Lancaster to five miles an hour, is unreasonable and invalid, and does not make a higher rate of speed of cars or trains in or through said city unlawful, or evidence of negligence on the part of a railroad company using such higher rate of speed. *Answer :* It is not necessary in this proceeding to consider whether or not the ordinance referred to is unreasonable and invalid or not.   While it is not per se evidence of negligence in a railroad company, if it should run its cars at any higher rate of speed than five miles per hour, it may be taken into consideration by the jury, with other evidence, in ascertaining whether or not the cars on July 3, 1891, were run at too high and dangerous a rate of speed where this accident occurred." [1]

" 3. As there was a watchman attending to and performing his duties at Prince street and Walnut street, where the defendant's railroad crosses said streets, and there was a brakeman performing his duties, on the front end of the front car of the two detached cars that ran over Sidney Lederman on Walnut street, there is no evidence of negligence on the part of the defendant as to the running or movement of said cars across said streets.   *Answer :* The facts set forth in the 3d point are under the evidence in the cause for the jury and we leave them with the jury, to say whether there was negligence." [2]

" 5. There is no sufficient evidence that the speed of the said two detached cars at Walnut street was improper or dangerous, or that the accident to the boy was the result of any improper or unreasonable speed of said cars.   *Answer :* The matter contained in 5th point is for the jury.   We leave it with them." [3]

6. Request for binding instruction.   Refused. [4]

Verdict and judgment for plaintiffs for $1,800.

*Errors assigned* were (1–6) instructions ; (7–9) rulings ; quoting bills of exception, evidence and instructions.

*H. M. North, E. D. North* with him, for appellant.—The contributory negligence of the parent precluded recovery : Rauch v. Lloyd, 31 Pa. 358 ; Smith v. O'Connor, 48 Pa. 218 ; Kelly v. R. R., 31 Pa. 376 ; Glassey v. R. R., 57 Pa. 172 ; Mahoney

v. R. R., 57 Pa. 187; R. R. v. Hummell, 44 Pa. 375; R. R. v. Spearen, 47 Pa. 300; Kay v. R. R., 65 Pa. 269; R. R. v. Lewis, 79 Pa. 33; Ry. v. Connell, 88 Pa. 520; R. R. v. Schwindling, 101 Pa. 258; Gillespie v. McGowan, 100 Pa. 144; Rodgers v. Lees, 140 Pa. 475; Cauley v. R. R., 95 Pa. 398: R. R. v. Heil, 5 W. N. 91; R. R. v. Morgan, 82 Pa. 134; Bridge Co. v. Jackson, 114 Pa. 321; R. R. v. Moore, 99 Pa. 301; Woodbridge v. R. R., 105 Pa. 460; McCool v. Coal Co., 150 Pa. 638; Chilton v. Traction Co., 152 Pa. 425; Patterson's Ry. Accident Law, §§ 79, 80; Ray on Negligence of Imposed Duties, § 196; 1 Sherman & Redfield, Neg. §§ 70–73.

The ordinance given in evidence was unreasonable, and the court has power to declare it void: Kneedler v. Norristown, 100 Pa. 368; Millerstown v. Bell, 123 Pa. 151.

The court should not have permitted plaintiff to prove that gates were erected shortly after the accident at the place where it occurred: Patterson's Ry. Accident Law, § 365.

The court should have held, as a matter of law, that plaintiffs were guilty of contributory negligence: R. R. v. Pearson, 72 Pa. 169; R. R. v. Long, 75 Pa. 257; Smith v. R. R., 92 Pa. 450; 1 Weimer on Railroads, 755, § 474.

*W. U. Hensel, J. Hay Brown* with him, for appellee.—There was no evidence of contributory negligence on part of plaintiffs: R. R. v. Long, 75 Pa. 257; R. R. v. Pearson, 72 Pa. 172; Kay v. R. R., 65 Pa. 276.

In cases of infants and children of tender years, if the evidence shows negligent conduct by defendant it is for the jury to determine whether such negligence caused the accident: Summers v. Brewing Co., 143 Pa. 114; Ry. v. Steinhart, 2 Penny. 358; Ry. v. Caldwell, 74 Pa. 421; Schnur v. Traction Co., 153 Pa. 29; Pa. Co. v. James, 81* Pa. 194.

Railroad companies owe special duties to the public at street crossings: R. R. v. Hummell, 44 Pa. 378; Pa. Co. v. James, 81* Pa. 202; Westerberg v. R. R., 142 Pa. 473; R. R. v. Lewis, 79 Pa. 33; R. R. v. Long, 75 Pa. 257; Reinike v. Traction Co., 13 Pa. C. C. R. 229; Patterson on Ry. Accident Law, §§ 158, 170; Lott v. Ry., 159 Pa. 474; Gilmore v. Ry., 153 Pa. 31; Haney v. Traction Co., 159 Pa. 398; Altoona etc. R. R. v. Tyrone etc. R. R., 160 Pa. 623; Powell v. R. R., 22 Hun, 56;

Frick v. R. R., 5 Mo. Ap. 435; Barry v. R. R., 92 N. Y. 289; McMillan v. R. R., 46 Iowa, 231; Hicks v. R. R., 64 Mo. 430; Williams v. R. R., L. R. 9 Exch. 157; Smith v. R. R., 25 Kan. 738; Frick v. R. R., 75 Mo. 542; Johnson v. R. R., 49 Wis. 529; Butler v. R. R., 28 Wis. 487; Ewen v. R. R., 38 Wis. 613; Farley v. R. R., 9 N. W. R. 230; Cheney v. R. R., 16 Hun, 415; Townley v. Ry., 53 Wis. 634; Daley v. R. R., 26 Conn. 591; Johnson v. Ry., 49 Wis. 529; R. R. v. Becker, 84 Ill. 483; Hart v. Devereux, 41 Ohio, 565; Lynch v. Smith, 104 Mass. 52.

It was negligence in the company to operate its road at this point without gates; and it seems to have recognized this by erecting them there soon afterwards.

Defendant company was guilty of negligence in not stationing watchmen of sufficient number and capacity at this place of danger: Patterson on Ry. Accident Law, §§ 165, 167.

Defendant company was negligent in running detached cars without bell, whistle or other signal across these crossings at a rate of at least eight or ten miles per hour; a speed which it was entirely permissible for the jury to find dangerous under the circumstances: Kay v. R. R., 65 Pa. 269.

Defendant company was guilty of negligence in detaching two cars and in making a "flying switch" at this particular point of peril: R. R. v. Troutman, 11 W. N. 455; Reeves v. R. R., 30 Pa. 464; Patterson on Ry. Accident Law, § 171; French v. Taunton Ry., 116 Mass. 540.

Defendant company was negligent, in that their employees made no effort to save the child: Biddle v. Ry., 112 Pa. 554; R. R. v. Mahoney, 57 Pa. 187; R. R. v. Spearen, 47 Pa. 300; R. R. v. Lewis, 79 Pa. 33.

The ordinance was properly admitted: Lane v. Atlantic Works, 107 Mass. 104.

The Pennsylvania authorities do not support the proposition cited from Mr. Patterson's text-book that "evidence is not admissible to prove that after an accident, a railway made changes in the construction of its line, or adopted a different mode of operation:" Specht v. R. R., 7 Pa. C. C. R. 54; R. R. v. McElwee, 67 Pa. 314; R. R. v. Henderson, 51 Pa. 320; McKee v. Bidwell, 74 Pa. 218; Cauley v. R. R., 95 Pa. 398.

OPINION BY MR. JUSTICE McCOLLUM, Jan. 7, 1895 :

About a half a mile from Lancaster station two cars were detached from the seashore express in order to allow the Philadelphia coach of the Columbia train to be connected with it ahead of them. .From the point of severance to the station there was a descending grade, and the railway tracks crossed three streets diagonally. When the detached cars were between Lemon and Walnut streets the brake was " thrown off to get a little more momentum and headway," and at the crossing of the latter they ran over and killed the plaintiff's child. There were no gates at this crossing, but there was an old man there whose duty it was to watch two crossings and see that persons walking or driving on Prince street or Walnut street did not get in the way of the trains. The evidence in regard to the speed of the cars at the point where the accident oc- curred was conflicting, some of the witnesses estimating it at ten, and others at four miles an hour. The crossings watched as above-stated were in a populous district of the city and there was a large amount of travel over them. No signal announced the approach of the cars to the crossing unless the waving of the watchman's flag can be regarded as such. In the presence of the undisputed facts and the conflicting testimony to which we have referred, the defendant company requests us to say there was no negligence on its part in connection with the occurrence under investigation. This we cannot do. In view of the great age and consequent infirmity of the watchman, there is room for doubt respecting his fitness for the duty with which he was charged. But waiving this and assuming that he was competent for the work assigned to him, did the company make adequate provision for and have due regard to the safety of persons walking or driving upon the streets in the vicinity of these crossings? As we have already seen, the crossings were in a populous district, and there was necessarily considerable travel over them on foot and in vehicles. Can a solitary watchman stationed on a corner bounded by the railway tracks and the intersected streets properly warn persons traveling upon these streets of the approach of a train ? To do so he must wave his flag where all persons approaching the crossings can see it, and he must be careful to note that the little box or house on his corner does not obstruct the view

from any direction.   Ought the company to have maintained gates at these crossings ?   Ought it to have allowed the detached cars to descend upon them at the rate of ten miles an hour with " the brake thrown off to get a little more momentum and headway ? "   These were questions to be answered by the jury upon the evidence, and therefore the learned court below did not err in refusing to affirm the company's third point.

The latter, however, contends that it has a defence to the action in the negligence of the plaintiff in permitting the child to go upon the streets alone in the manner described in the testimony.   But this contention also presented, in our opinion, a question for the jury, to whom it was referred in appropriate instructions.   It is for them and not for the learned court below, or for us, to say whether the implied permission given by the mother to the child to go to a near neighbor's on the same street to help his playmate sell " shooting crackers " from a stand erected at his own home constituted negligence which satisfied the company's contention on this point : Long et ux. v. Phila. & Reading Railroad Company, 75 Pa. 257, and Dunseath v. Traction Co., 161 Pa. 124.

We discover nothing in the rulings upon offers of evidence which calls for a reversal of the judgment.   That the company very soon after the accident erected gates at the crossing where it occurred was a fact for the consideration of the jury : Penna. R. R. Co. v. Henderson, 51 Pa. 315 ; West Chester & Phila. R. R. Co. v. McElwee, 67 Pa. 311 ; and McKee v. Bidwell, 74 Pa. 218.   The evidence was particularly pertinent in this case because the jury had been upon the ground, and had seen the gates there.   To rebut an inference that the gates were there at the time of the accident it was proper to inform them when they were erected.

Ample opportunity was afforded the company to show the speed of the cars near to and at the crossing.   John Keneagy was five hundred feet west of Lemon street, and did not see the cars after they crossed it.   He was not very well qualified to speak of their speed after " the brakes were thrown off " and they were nearing the point where the accident occurred.

We are not convinced that the court erred in overruling the objections to and admitting the ordinance in relation to the speed of railway trains within the city limits, or in the instruc-

tions to the jury respecting the consideration they should give to it in connection with the other evidence in the case : Penna. R. R. Co. v. Lewis, 79 Pa. 33, and Lane v. Atlantic Works, 111 Mass. 136.

Judgment affirmed.