## Kaseman v. Borough of Sunbury.

*Negligence—Railroads—Embankment in street—Duty of municipality.*

It will not be presumed that a railroad company intends that a part of its right of way on an embankment in the street of a borough, in actual use in the operation of its road, should be appropriated longitudinally by pedestrians as a public thoroughfare.

Where a person walking longitudinally along an embankment erected by a railroad company in a public street for railroad purposes is injured, it matters not whether the injury was received from a passing train or by falling into an opening in the company's right of way. The railroad company as against the pedestrian had the exclusive use of the embankment and when he entered upon it he became a trespasser. The railroad company owed no duty to the pedestrian to span an alley which passed through the embankment and under its tracks with a foot walk or to guard it by the erection of barriers to prevent him from falling into it.

In an action against a municipality for the death of a pedestrian who was killed by falling into an open space in an embankment erected longitudinally in a public street by a railroad company, there can be no recovery either on the ground that in effect the embankment as constructed was a substituted highway, or that the permissive use of it by all persons passing along the street made the defendant responsible for its proper maintenance.

Argued May 22, 1900. Appeal, No. 158, Jan. T., 1900, by plaintiff, from order of C. P. Northumberland Co., May T., 1899, No. 431, refusing to take off nonsuit, in case of Hannah E. Kaseman v. Borough of Sunbury. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before McCLURE, P. J., specially presiding.

The facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* among others was in refusing to take off nonsuit.

*S. B. Boyer*, with him *C. M. Clement*, for appellant, cited Gilmore v. Federal St., etc., Pass. Ry. Co., 153 Pa. 31, Township of Ashon v. McClure, 102 Pa. 322, Phila. & Reading R. R. Co. v. Troutman, 11 W. N. C. 453, Penna. R. Co. v. Lewis, 79 Pa. 33, and Taylor v. Delaware & Hudson Canal Co., 113 Pa. 162.

*J. F. Schaffer*, with him *Walter Shipman*, for appellee, cited Moore v. Penna. R. Co., 99 Pa. 301, Ehrisman v. East Harrisburg City Pass. Ry. Co., 150 Pa. 180, Penna. R. Co. v. Mooney, 126 Pa. 244, and Delaware, L. & W. R. R. Co. v. Cadow, 120 Pa. 559.

OPINION BY MR. JUSTICE MESTREZAT, July 11, 1900:

This was an action of trespass brought by the plaintiff to recover damages for the death of her husband caused by injuries sustained by falling into an opening in the embankment at the intersection of Penn street and Center alley in Sunbury.

The following facts were conceded or established by admittedly competent testimony. James Kaseman, the plaintiff's husband, and D. W. Shipman, Esq., residents of Shamokin, went to Sunbury on June 21, 1898. They attended a social gathering that day, near Sunbury, and were together until the accident occurred which resulted in the death of Kaseman. They spent the evening at the rooms of the association of the Elks, which are located on the north side of Market street, between Third and Fourth streets, in Sunbury. About 12:30 A. M. of the morning of June 22, 1898, they left these rooms and started for the passenger depot of the Philadelphia & Reading Railroad with the intention of taking a train at 12:52 A. M. for their home at Shamokin. The night was dark. This station is located at the corner of Second and Penn streets, about five squares in a southwesterly direction from the Elks' rooms.

Market, Chestnut, Penn and Church streets extend east and west and intersect at right angles Second, Third and Fourth streets and another small street between Second and Third streets, known as Center alley. The plaintiff's husband and Mr. Shipman on leaving the Elks' rooms started west on Market street, but when they reached Third street they found a freight train moving north on the track of the Pennsylvania Railroad which extends along Third street. Seeing they could not cross Third street without going over the overhead crossing, they turned south on Third street intending to go to Chestnut street and thence along it and Second street to the depot. When they arrived at Chestnut street, however, they found their passage west on it obstructed by the same train and they continued along Third street till they came to Penn street. The two tracks of the Philadelphia & Reading Railroad are laid on Penn street at an elevation of eight or ten feet above the surface. These tracks were first laid in 1883 or 1884 upon trestlework erected in the bed of the street, but subsequently a fill was made except where the railroad crosses Center alley, and thus was constructed the embankment on which the tracks now rest. From Third street to Center alley there is a roadway on the north side of the embankment but it does not extend from Center alley to the railroad station at Second street. Pedestrians desiring to go between Third street and Second street have been accustomed to enter upon the embankment and pass along it crossing Center alley on the trestling upon which the railroad tracks are laid. The trestlework was of sufficient height to permit traveling underneath it. Planks are laid on it longitudinally with the tracks at Center alley, but the trestling only extends the width of the tracks, with no foot walk or guard rail at either side of it. On the night of the accident, when the deceased and his companion were at Chestnut or Penn street en route to the depot, they heard the train whistle for the station. From Chestnut street they went south on Third street between cars standing on the Pennsylvania tracks to Penn street. Here, on the west side of Third street, they, without looking for a sidewalk on either side of Penn street, went upon the embankment and on the Reading track or along the edge of it and started immediately westward along the tracks for the depot. They ran, "not at full speed" but "at.

a pretty good pace," in order to make the Reading train, Shipman passing between the two tracks and the deceased running on the outer ends of the ties of the northern track. Kaseman struck his foot against the switch rod which is a short distance east of Center alley, but recovered himself and continued to run until he stumbled and fell at or near the trestlework supporting the railroad bridge over Center alley, and received the injuries from which he died. There are dwelling houses located on both sides of Penn street between Third street and Center alley. At the intersection of Penn street with Second and Third streets, there were notices warning the public against trespassing on the railroad. These notices were in large letters and were posted on the embankment. From the plan of the locus in quo printed in the appellant's paper-book it appears there are two routes from the Elks' rooms on Market street to the Reading depot, equally as direct as that taken by Kaseman and his companion on the night of the accident; by the one, you go west two squares on Market street, crossing the Pennsylvania tracks on Third street by an overhead crossing, to Second street, thence south on Second street two squares to the depot; by the other, you go west one square on Market to Third street, south on Third street one square to Chestnut, west on Chestnut street one square to Second street, thence south on Second street one square to the depot.

The plaintiff having closed her testimony, the court, on motion of defendant's counsel, entered a nonsuit, which it subsequently refused to take off. In this, we think, there was no error.

The statement is not printed, but the learned counsel for the plaintiff states her contention in their printed brief as follows: " That in effect this embankment as constructed was a substituted highway, ten feet in width from the outer or northern rail; that the permissive use of it by all persons passing east and west along Penn street made the defendant responsible for its proper maintenance and that the construction of the way over Center alley without proper foot walks on either side of the tracks and guard rails was a dereliction of duty for which the borough was answerable in damages."

The appellant is clearly in error in assuming that the embankment or any part of it was a highway on which the de-

ceased had the right to enter and walk on the night of the accident. It may be conceded, for it abundantly appears by the testimony, that people were accustomed to use the embankment as a footpath between Second and Third streets. This, however, of itself did not constitute it a public highway, which the defendant was required to maintain in a safe condition. Nor did it, under the circumstances, show an acquiescence by the railroad company or the borough in its use as such. It must be assumed that the embankment was constructed to take the place of the trestle work on which the railroad tracks were laid in 1883, and which continued to support the tracks until it was replaced by the embankment. Such being the case we cannot presume that the railroad company or the defendant intended that any part of it should be used by the public. As we have said, the use of it by the people in the manner shown by the testimony did not establish that fact. Their path was not across the embankment, but along it. The necessary appliances of the railroad, in addition to the tracks, occupied the ground claimed to be permissively appropriated by the public for a pathway. This clearly negatives the presumption that the use of it was permissive. It will not be presumed that the company intended that a part of its right of way in actual use in the operation of its road should be appropriated longitudinally by pedestrians as a public thoroughfare.

It also appears from the testimony, that at the bridge over Center alley there were no sidewalks or footways on which persons using the embankment could cross that alley, and that such persons were necessarily compelled to use the railroad tracks to cross it. It has not been, and will not be, contended that the public had a right to make a footway out of the railroad bridge, nor that the company intended that it should. The absence of a footway crossing the alley was, therefore, notice to all persons using the embankment that they were not expected or permitted to use it in passing between Second and Third streets. They were thus notified that they were trespassers and subject to the risks incident thereto.

That the railroad company did not consent to the use of the embankment by the public as a highway is established not only by the fact that it was necessary to use it for railroad purposes but also by the further fact that it had warned the public not

to use it. The evidence shows that notices were posted by the company along the right of way notifying persons using the embankment that they would be regarded as trespassers. These notices, as shown by the plaintiff's witnesses, were posted on the embankment at the intersection of both Second and Third streets, the points at which the public was most likely to enter upon the right of way. In no other way could the company more emphatically have expressed its dissent from the use of its property by the public. We do not understand that the company was required to maintain a police force there to prevent pedestrians from trespassing on its premises, nor to relieve it or the borough from liability for the reckless act of the deceased in running along the embankment on a dark night and falling into an open space within its right of way. Unless such an anomalous proposition can be maintained, the deceased was a trespasser when he went upon the embankment and ran thereon towards the Reading depot, and he assumed the risks incident to his wrongful act. Whether Kaseman saw the trespass notice or not is immaterial. From the rapidity with which he and his companion passed upon and along the embankment and the little care they gave to the dangerous route they were traveling, it may be assumed he did not see the notice. But as he was a stranger in Sunbury he could not have known that the public was accustomed to use the embankment as a public highway, if it was so used, as alleged by the plaintiff, and hence it was his duty to have assumed that he had no right to use it as such, that it was a place of danger and that he must avoid it.

It is claimed and argued most strenuously by the learned counsel for the plaintiff that the deceased, at the time he received his injuries, was on that part of the embankment " ten feet in width from the outer or northern rail," that was used by the public as a footpath, and not on the part in actual use by the railroad company. The evidence, as we have shown above, does not sustain the contention. The uncontradicted testimony shows that as Kaseman proceeded along the embankment he stumbled over the switchrod and continued to run on the ends of the ties until he fell into the open space within the line of the embankment. It, therefore, does not lie with him, or the plaintiff, to allege that he was not upon a part of the embankment in actual use by the company in the operation of its road when he received his fatal injuries.

To support the position that the embankment or the part of it north of the railroad tracks was a permissive highway along which the deceased had the right to pass to the depot, the plaintiff cites and relies on Philadelphia & Reading Railroad Company v. Troutman, 11 W. N. C. 453, Pennsylvania Railroad Company v. Lewis, 79 Pa. 33, and Taylor v. Delaware & Hudson Canal Company, 113 Pa. 162. But these cases are clearly distinguishable from the case in hand. Kaseman, at the time he received his injuries, was not attempting to cross the right of way of a railroad company by a well known path constantly used by the public, as was the case in Philadelphia & Reading Railroad Company v. Troutman and in Taylor v. Canal Company, but he was using the tracks of the railroad company for passing longitudinally from Third to Second street. In other words, he was using the railroad bed between those streets as a public highway, as appellant claims a part of the embankment to be. Philadelphia & Reading Railroad Company v. Troutman holds that a person crossing a railroad track by a common and well known footpath, used by the public for many years without let or hindrance on the part of the company or its employees, cannot be regarded as a trespasser, and in Taylor v. Canal Company it is held that when it is shown that the footpath across the railroad track has been habitually used by the public for many years without objection, it is a question of fact for the jury to determine whether the railroad company has not acquiesced in such use. The question in Pennsylvania Railroad Company v. Lewis was, as said by Chief Justice AGNEW, delivering the opinion of the court, "whether a railroad company may enter into the outskirts of a populous city at a high and dangerous rate of speed, even though it be upon its own track where the people have no right to be." These cases, therefore, are not authority for the position that a person using the tracks of a railroad company under the circumstances of this case is not a trespasser, or that the question is for the jury.

We think, however, that the case at bar is more nearly allied to the class of cases represented by Moore v. Pennsylvania Railroad Company, 99 Pa. 301, and Delaware, L. & W. R. R. Company v. Cadow, 120 Pa. 559. In the last case it is held that when it was uncontroverted that the plaintiff, a cripple with a

stiff leg, left a safe path along the sidewalk of a street, to pass hastily, in the night-time and without a light, diagonally over a railroad crossing, the condition of which he did not know, and stumbled among the rails and planking, fell and was injured, it was error to refuse binding instructions that the verdict should be for the defendant. In Moore v. Pennsylvania Railroad Company, the present chief justice, delivering the opinion of the court, says: "It was affirmatively established, and entirely undisputed, that the deceased was walking on and along the track at the time of the accident. He was not on the track at a public crossing, nor was he in the act of crossing. It is true that the railroad track at this place was laid upon the bed of a public street, and the right to use it was not limited to the highway or street crossings. But the boy was walking along the track, and not across it, when he was struck. This he clearly had no right to do." In the same opinion, the chief justice further says: "We have so frequently held, that in such circumstances (a boy of ten years trespassing on a railroad track) there can be no recovery, that it is unnecessary to quote the authorities. . . . They (railroad companies) are not subject to an obligation to take precautions against any class of persons who may walk on or along their tracks." In Philadelphia & Reading Railroad Company v. Hummell, 44 Pa. 379, Mr. Justice Strong, delivering the opinion of the court, says, inter alia : " But if the use of a railroad is exclusively for its owners, or those acting under them; if others have no right to be upon it; if they are wrongdoers whenever they intrude, the parties lawfully using it are under no obligation to take precautions against possible injuries to intruders upon it."

These authorities are applicable to the case in hand. Whether the deceased met his death by a passing train or by falling into an opening in the company's right of way is immaterial so far as his right to protection from the railroad company or defendant borough is concerned. The railroad company was at the time of the accident in possession of and using the part of the embankment on which the deceased was injured. It, therefore, had, as against him and other intruders, the exclusive use of it, and when the deceased entered upon it, he became a trespasser. The company owed no duty to Kaseman to span the alley with a foot walk or to guard it by the erection of barriers to prevent

him from falling into it.    No such precautions could be exacted of it for his safety.

The deceased was clearly guilty of negligence in the manner in which he passed along the embankment after he had entered upon it.    Had he exercised reasonable care as he passed along it, he would not have fallen into the opening at the alley.    It was a dark night and he was without a light.    He was a stranger to the community and not familiar with the railroad bed.    Notwithstanding these facts, he made no effort to pursue his way carefully but ran at a good speed along the ends of the railroad ties " to the very time he pitched over " into the opening at Center alley.    If, therefore, he had been rightfully on the embankment, such conduct would have convicted him of negligence and prevented a recovery for the injuries he received.

There was no necessity for Kaseman and his companion taking the route they did take in order to go from the Elks' rooms to the depot.    The way they at first evidently intended to go, and should have gone, was west on Market to Second street and then to the station.    The overhead crossing would have enabled them to pass over the Pennsylvania tracks on Third street in safety and to have reached their destination without incurring the risk of passing along the railroad tracks on Third and Penn streets on a dark night.    After they reached the embankment at Penn street they exercised no greater care for their safety.    Instead of going upon the embankment, they could and should have gone along the roadway on the part of Penn street on the north side of the embankment not occupied by the railroad, to Center alley, and there deflected their course so as to reach the station.    This simple precaution would have prevented the accident that occurred and saved a human life.

It is clear, under the facts disclosed on the trial, that the contention of the plaintiff " that in effect this embankment as constructed was a substituted highway " and " the permissive use of it by all persons passing east and west along Penn street made the defendant responsible for its proper maintenance " cannot be sustained.    The deceased in traveling along the embankment was a trespasser on the right of way of the railroad company to whom neither the company nor the defendant borough owed the duty of protection from danger at the opening at Center alley.    He had no right to enter upon the embank-

ment, and was guilty of negligence in the manner in which he traveled along it. His own conduct would prevent a recovery in this action.

The admission in evidence of the borough ordinance, the rejection of which is the subject of the first assignment, would not have supported the contention of the plaintiff that the embankment was a substituted highway or that it was used by the public by permission of the railroad company, hence, it was properly excluded. Without the testimony elicited by the defendant on cross-examination, the admission of which is complained of in the fourth, fifth and sixth assignments, sufficient facts were developed on the trial of the cause to prevent a recovery by the plaintiff.

The assignments of error are overruled and the judgment is affirmed.